1  Tionna Dolin (SBN 299010)
   e-mail: tdolin@slpattorney.com
2  **STRATEGIC LEGAL PRACTICES**
   **A PROFESSIONAL CORPORATION**
3  1840 Century Park East, Suite 430
   Los Angeles, CA 90067
4  Telephone: (310) 929-4900
   Facsimile:  (310) 943-3838
5
6  Attorney for Plaintiffs
   NINA Q. HUANG and TONY L. CUMMINS
7
8              **UNITED STATES DISTRICT COURT**
9             **CENTRAL DISTRICT OF CALIFORNIA**
10
11 NINA Q. HUANG and TONY L.          Case No.: 2:20-cv-08157
   CUMMINS,
12                                    Hon.
            Plaintiffs,              Dept.:
13
14      vs.                          **COMPLAINT FOR VIOLATION**
                                     **OF STATUTORY OBLIGATIONS**
15 BMW OF NORTH AMERICA, LLC;
   and DOES 1 through 10, inclusive,
16
                                     **JURY TRIAL DEMANDED**
17          Defendants.
18
19
20
21
22
23
24
25
26
27
28

_STRATEGIC LEGAL PRACTICES, APC_
1840 CENTURY PARK EAST, SUITE 430 LOS ANGELES, CA 90067

**COMPLAINT; JURY TRIAL DEMANDED**

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because the action alleges claims pursuant to 15 U.S.C. §2310, the Magnuson Moss Warranty Act, with a claim that exceeds the amount in controversy of $50,000, pursuant to 15 U.S.S. §2310(d)(3)(B).

2.      Further, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is minimal diversity as Plaintiff and Defendants are citizens of different states, with a claim that exceeds the amount in controversy of $75,000.

## GENERAL ALLEGATIONS

3.      As used in this Complaint, the word "Plaintiff" shall refer to Plaintiff NINA Q. HUANG and TONY L. CUMMINS.

4.      Plaintiff is a resident of Los Angeles County, California.

5.      As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint, unless otherwise specified.

6.      Defendant BMW of North America, LLC ("Defendant" or "BMW NA") is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California.  At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County, California. BMW NA distributes BMW vehicles and sells these vehicles. through

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**COMPLAINT; JURY TRIAL DEMANDED**

its network of dealers. Money received from the purchase of a BMW vehicle from a dealership flows from the dealer to BMW NA.

7.     Plaintiff are ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474.  When Plaintiff become aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

## FACTUAL BACKGROUND

8.     In or about July 24, 2011, Plaintiff purchased a 2012 BMW 750i vehicle identification number WBAKA8C5XCCY37852, (hereinafter "Vehicle"), from BMW of Monrovia, which was manufactured and or distributed by Defendant.  The Vehicle was purchased or used primarily for personal, family, or household purposes.  Plaintiffs purchased the Vehicle from a person or entity engaged in the business of manufacturing, distributing, or selling consumer goods at retail.

9.     In connection with the purchase, Plaintiff received express written 4 year/50,000 mile bumper-to-bumper, a 4 year/50,000 mile powertrain warranties which, inter alia, covered the engine and the transmission, and a 8 year/80,000 mile emissions-related warranty. Defendant undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time.  The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired. A true and correct copy of Defendant's express warranty manual is attached hereto as **Exhibit A**.

10.     During the warranty period, the Vehicle contained or developed defects, including but not limited to, defects relating to the Vehicle's engine;

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**COMPLAINT; JURY TRIAL DEMANDED**

defects causing excessive oil consumption; defects necessitating excessive oil top-ups between oil services; defects causing oil leaks; defects causing Vehicle to burn engine oil; defects causing the vacuum pump to leak oil; defects causing failure and/or replacement of the engine vacuum pump; defects causing a drivetrain message and/or drivetrain malfunction warning light to illuminate; defects causing the Vehicle to shake and/or shake when attempting to accelerate; defects causing reduced power; defects causing premature failure and/or replacement of spark plugs; defects causing engine misfires; defects causing rough running; defects causing the engine's cylinder 5 to misfire; defects causing cylinder 5 to be faulty; defects causing a maximum output limited warning; defects causing failure of the low pressure fuel sensor; defects causing storage of DME fault codes for mixture bank 2; defects causing mixture bank 2 to be too rich; defects causing misfires in bank 2; defects causing storage of DME fault code 119201; defects causing a fuel low pressure sensor short circuit to the battery; defects causing failure and/or replacement of the low pressure fuel rail with sensor; defects causing brittle and/or cracked crankcase valves and/or drain tubes; defects causing failure and/or replacement of crankcase valves and/or drain tubes; defects causing the Vehicle to fail to program; defects causing modules to fail to communicate; defects requiring the battery be reset; defects requiring performance of technical service bulletins (TSBs) SI B13 02 15, SI B11 06 14, and SI B11 16 14; defects causing failure and/or replacement of the high pressure fuel pump for banks 1 and/or 2; defects causing failure and/or replacement of the injectors; defects requiring a programming retrofit for oil change intervals; defects causing storage of low voltage faults; defects causing the Bluetooth to malfunction; defects causing the Bluetooth and/or audio systems to cut out randomly; and/or all other defects as delineated in the repair orders. Said defects substantially impair the safety, use and value of the Vehicle.

**COMPLAINT; JURY TRIAL DEMANDED**

11.     Plaintiff purchased the Vehicle as manufactured and/or distributed with Defendant BMW NA's V-8, twin-turbocharged engine, which BMW and enthusiasts refer to as the "N63."

12.     Defendant BMW NA allowed the Vehicle to be sold to Plaintiff without disclosing that the Vehicle and its N63 engine was defective and susceptible to sudden and premature failure.

13.     In particular, Plaintiff is informed, believe, and thereon alleges that prior to Plaintiff acquiring the Vehicle, BMW NA was well aware and knew that the N63 engine installed on the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of sale and thereafter.[1]

14.     Specifically, BMW NA knew (or should have known) that the twin-turbo charged engine had one or more defects that causes the subject vehicle to be unable to properly utilize the engine oil and, in fact, to improperly burn off, leaks, and/or consume abnormally high amounts of oil, resulting in premature failure of engine components and unexpected malfunction of the engine's operation (the "Engine Defect" or "engine defect").

15.     Thus, the Engine Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted.  Therefore, this engine defect is unreasonably dangerous because it can cause engine failure while the vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the subject vehicles equipped with the N-63 engines drivers (including plaintiff), their passengers and others who share the road with them to serious risk of accidents and injury.[2]

[1] Indeed, Defendant has issued various internal technical bulletins to its dealers (not consumers) concerning the Engine Defect.

[2] The Engine Defect was particularly apparent in a recent Consumer Reports study on excessive oil consumption.  Consumer Reports studied 498,900 vehicles across several makes and models for complaints about engine oil consumption and concluded BMW's twin turbocharged engine was included on four out of the five most defective vehicles.

COMPLAINT; JURY TRIAL DEMANDED

16.     The Engine Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, causes voluminous oil consumption, resulting in premature failure of engine components and unexpected malfunction of the engine's operation, that cannot be reasonably anticipated or predicted.  Therefore, the Engine Defect is unreasonably dangerous because it can cause engine failure while the subject vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the subject vehicle's drivers, passengers, and others who share the road with them, to serious risk of accidents and injury.

17.     Plaintiff is informed, believes and thereon alleges that Defendant BMW NA acquired its knowledge of the Engine Defect prior to Plaintiff acquiring the Vehicle, though sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to BMW NA and its network of dealers, aggregate warranty data compiled from BMW NA's network of dealers, testing conducted by BMW NA in response to these complaints, as well as warranty repair and parts replacement data received by BMW NA from BMW NA's network of dealers, amongst other sources of internal information.

18.     Plaintiff is informed, believe, and thereon alleges that while Defendant BMW NA knew about the Engine Defect, and its safety risks since mid-2008, if not before, BMW NA nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiff at the time of sale and thereafter.  Had Plaintiff known that the Vehicle suffered from the Engine Defect, he would not have purchased the Vehicle.

19.     Indeed, Plaintiff alleges that prior to the sale of the Vehicle to Plaintiff, Defendant BMW NA knew that the Vehicle and its N63 engine suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

20. Defendant BMW NA was under a duty to Plaintiffs to disclose the defective nature of the Vehicle and its N63 engine, its safety consequences and/or the associated repair costs because:

    a. Defendant BMW NA acquired its knowledge of the Engine Defect and its potential consequences prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the Engine Defect made directly to BMW NA and its network of dealers, aggregate warranty data compiled from BMW NA's network of dealers, testing conducted by BMW NA in response to these complaints, as well as warranty repair and part replacements data received by BMW NA from its network of dealers, amongst other sources of internal information;

    b. Defendant BMW NA was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with N63 engine; and

    c. Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Engine Defect and its potential consequences until well after Plaintiff purchased the Vehicle.

21. In failing to disclose the defects in the Vehicle's N63 engine, Defendant BMW NA has knowingly and intentionally concealed material facts and breached its duty not to do so.

22. The facts concealed or not disclosed by Defendant BMW NA to Plaintiff is material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle. Had Plaintiff

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

known that the Vehicle and its N63 engine were defective at the time of sale, he would not have purchased the Vehicle.

23.    Plaintiff is a reasonable consumer who does not expect his engine to fail and not work properly.  Plaintiff further expects and assumes that Defendant BMW NA will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicle's N63 engine and will disclose any such defect to its consumers before selling such vehicles.

24.    Plaintiffs were harmed by Defendant's concealment of the Engine Defect, which was a substantial factor in causing Plaintiff's harm. The concealment substantially influenced Plaintiffs' purchase of the Subject Vehicle. Plaintiffs would not have purchased the Subject Vehicle had the Engine Defect been disclosed prior to sale. As a result of Defendant's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.  Plaintiffs were harmed by purchasing a vehicle that Plaintiffs would not have leased and/or purchased had Plaintiff known the true facts about the Engine Defect. Furthermore, Plaintiff unknowingly exposed themselves to the risk of liability, accident and/or injury as a result of Defendant's fraudulent concealment of the Engine Defect, which is a safety hazard.

25.    The acts of Defendant's corporate employees as alleged were authorized or ratified by an office, director, or managing agent of Defendant.

## TOLLING OF THE STATUTES OF LIMITATIONS

26.    To the extent there are any statutes of limitation applicable to Plaintiff's claims—including, without limitation, his express warranty and implied warranty—the running of the limitation periods have been tolled by equitable tolling, class action tolling (including, but not limited to, the *Bang v. BMW of North America, LLC* (Case No. 2:15-CV-6945) Complaint, as well as any related class actions filed in or around 2015, and First Amended Complaint,

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

filed December 21, 2015, the discovery rule, fraudulent concealment rule, repair rule, and/or equitable estoppel.

### Some Pertinent Portions of Plaintiffs' Purchase and Repair History

27.     In or about July 24, 2011, Plaintiff purchased a 2012 BMW 750i vehicle identification number WBAKA8C5XCCY37852, (hereinafter "Vehicle"), from BMW of Monrovia, which was manufactured and or distributed by Defendant.  Prior to purchasing the subject vehicle, inter alia, Plaintiff considered Defendant's marketing materials which did not disclose that the subject vehicle and its N-63 engine were defective.  Had Defendant disclosed the problems with the subject vehicle and/or its defective N-63 engine to Plaintiff, Plaintiff would have been aware of it and would not have purchase the subject vehicle equipped with the N-63 engine.

28.     On or about June 19, 2014, with 28,628 miles on the odometer, and after having performed an oil service at approximately 26,500 miles, Plaintiff presented the Subject Vehicle to Defendant's authorized repair facility, BMW of Monrovia, with various concerns including, an engine oil leak. Defendant's technicians verified the engine oil leak and replaced the engine vacuum pump.

29.     On or about October 8, 2014, with 31,271 miles on the odometer, Plaintiff returned the Subject Vehicle to Defendant's authorized repair facility, for various drivability concerns.   In response, the dealer verified plaintiff's various concerns and performed repairs, inter alia, to the subject vehicle's engine and/or engine related parts.  During this visit, the dealer also verified "misfire in bank 2 and DME fault codes 119201."  Plaintiff's concerns were verified and the low pressure fuel sensor was replaced under warranty.  The dealer also performed various other repairs.

30.     On or about September 15, 2015, with 35,670 miles on the odometer, Plaintiff returned the Subject Vehicle to Defendant's authorized repair facility to perform various engine-related recalls, including but not limited the N-

Strategic Legal Practices, APC
1840 Century Park East, Suite 430, Los Angeles, CA 90067

63 campaign which involved replacing multiple engine parts.  During this visit, Defendant had assured Plaintiff that the N-63 recall would resolve the various engine issues.

31.    Nonetheless, on or about December 19, 2017, with 45,596 miles on the odometer, Plaintiff retuned the Subject Vehicle to Defendant's authorized repair facility, for various concerns including, shaking when attempting to accelerate, reduced power, and illumination of the "drivetrain malfunction warning" light. Defendant's technicians verified the engine was misfiring and concluded ignition coil cylinder 5 was faulty. Defendant's repair facility charged Plaintiff $1,840.17 for the repairs conducted.

32.    As a result of the foregoing and given that Plaintiff had to pay over $1,800 for engine related repairs, that BMW had previously assured Plaintiff had been repaired, in 2018, Plaintiff contacted Defendant directly seeking repurchase. Defendant denied Plaintiff's request on or about July 6, 2018. Plaintiff was unable to discover Defendant's wrongful conduct alleged herein, including concealment of the latent Engine Defect, and its inability to conform the Subject Vehicle to the applicable warranties until the defects persisted following a reasonable number of repair attempts.

**A.    The Repair Doctrine**

33.    The statute of limitations is tolled by various unsuccessful attempts to repair the Subject Vehicle.[3]

34.    Additionally, the limitations period for warranty claims is tolled against a defendant whenever that Defendant claims that the defect is susceptible to repair and attempts to repair the defect.[4]

---

[3] See *Aced v. Hobbs–Sesack Plumbing Co.*, 55 Cal.2d 573, 585 (1961) ("The statute of limitations is tolled where one who has breached a warranty claims that the defect can be repaired and attempts to make repairs.") and *A&B Painting & Drywall, Inc. v. Sup. Ct.*, 25 Cal.App.4th 349, 355 (2002) ("Tolling during a period of repairs rests upon the same basis as does an estoppel to assert the statute of limitations, i.e., reliance by the plaintiff upon the words or actions of the defendant that repairs will be made.").

[4] "Tolling during a period of repairs generally rests upon the same legal basis as does an estoppel to assert the statute of limitations, i.e., reliance by the plaintiff on the words or actions of the defendant that repairs

**COMPLAINT; JURY TRIAL DEMANDED**

35.    Here, Defendant undertook to perform various repairs and issued various repair measures in the form of TSBs and recalls. During the time in which Defendant represented to Plaintiffs that the Subject Vehicle was fixable and attempted to fix it, the warranty period may thus have been tolled.

### FIRST CAUSE OF ACTION
### BY PLAINTIFF AGAINST DEFENDANT BMW NA
### VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2

36.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

37.    Defendant and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities.  Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

38.    Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

39.    Plaintiff suffered damages in a sum to be proven at trial in an amount not less than $75,000.00.

40.    Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle

will be made." *Cardinal Health 301, Inc.*, *supra,* 169 Cal.App.4th at pp. 133–34.

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

or make restitution.  Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

41.    Defendant does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

42.    Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

**SECOND CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT BMW NA**

**VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

43.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

44.    Although Plaintiff presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b).  Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

45.    Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

46.    Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle, and has exercised a right to cancel the purchase.  By serving this Complaint, Plaintiff does so again.  Accordingly, Plaintiff seeks the remedies

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**COMPLAINT; JURY TRIAL DEMANDED**

provided in California Civil Code section 1794(b)(1), including the entire contract price. In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects. Plaintiff believes that, at the present time, the Vehicle's value is *de minimis.*

47. Defendant's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**THIRD CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT BMW NA**

**VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2**

48. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

49. In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period. Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

50. Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly,

Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

## FOURTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT BMW NA
## BREACH OF EXPRESS WRITTEN WARRANTY
### (CIV. CODE, § 1791.2, SUBD. (a); § 1794)

51.    Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

52.    In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representative in this state to perform warranty repairs. Plaintiff did so within a reasonable time.   Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the Defects.    However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

53.    Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

54.    Defendant's failure to comply with its obligations under the express warranty was willful, in that Defendant and its authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so.  Accordingly, Plaintiff is entitled to a civil penalty of two times of Plaintiff's actual damages pursuant to Civil Code section 1794(c).

//
//
//
//
//
//

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1
2
3
4
5

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430 LOS ANGELES, CA 90067

# FIFTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT BMW NA
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
### (CIV. CODE, § 1791.1; § 1794; § 1795.5)

55.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

56.     Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability.  Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

57.     Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements:  (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

58.     At the time of purchase, or within one-year thereafter, the Vehicle contained or developed the defects set forth above. The existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

1  Plaintiff has been damaged by Defendant's failure to comply with its

2  obligations under the implied warranty, and therefore brings this Cause of

3  Action pursuant to Civil Code section 1794.

### SIXTH CAUSE OF ACTION

4

### BY PLAINTIFF AGAINST DEFENDANT BMW NA

5

### VIOLATION OF CONSUMER LEGAL REMEDIES ACT

6

### (CIV. CODE §§ 1750 *et seq.*)

7

8  59.     Plaintiff hereby incorporates by reference the allegations contained in

9  the preceding paragraphs of this Complaint.

10  60.     Defendant is a "person" as defined by California Civil Code §

11  1761(c).

12  61.     Plaintiff is a "consumer" within the meaning of California Civil Code

13  § 1761(d).

14  62.     Defendant violated the California Consumer Legal Remedies Act

15  ("CLRA") when, inter alia, it engaged in unfair and deceptive acts, and by

16  knowingly warranting and allowing to be sold to Plaintiff the Vehicle without

17  disclosing that the Subject Vehicle and its N63 engine was defective and

18  susceptible to sudden and premature failure.

19  63.     Specifically, and prior to Plaintiff purchasing the Subject Vehicle,

20  Defendant knew that 2012 BMW 750i vehicles equipped with a N63 engine had

21  the Engine Defect.

22  64.     The Engine Defect presents an unreasonable safety hazard because it

23  can cause engine failure while the Subject Vehicle is in operation at any time and

24  under any driving conditions or speeds, thereby exposing the subject vehicle's

25  driver, passengers, and others who share the road with them, to serious risk of

26  accidents and injury.

27  65.     Plaintiff is informed, believes, and thereon alleges that while

28  Defendant knew about the Engine Defect, and its safety risks since 2008, if not

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

before, Defendant nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiff at the time of sale and thereafter.  Had Plaintiff known that the Subject Vehicle suffered from the Engine Defect, she would not have purchased the Subject Vehicle.

66.     By failing to disclose and concealing the defective nature of the N63 engine from Plaintiff, Defendant violated California Civil Code § 1770(a), as it represented that the Vehicle and its engine had characteristics and benefits that they do not have, and ii) represented that the Vehicle and its engine were of a particular standard, quality, or grade when they were of another. See Cal. Civ. Code §§ 1770(a)(5) and(7).

67.     Unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving not only Plaintiff but a substantial portion of the purchasing public, and imposed a serious safety risk on the public, including Plaintiff.

68.     Defendant knew that the Vehicle and its N63 engine suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

69.     Defendant was under a duty to Plaintiff to disclose the defective nature of the Subject Vehicle and its N63 engine, its safety consequences and/or the associated repair costs:

a. Defendant BMW NA acquired its knowledge of the Engine Defect and its potential consequences prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the Engine Defect made directly to BMW NA and its network of dealers, aggregate warranty data compiled from BMW NA's network of dealers, testing conducted by BMW NA in response to these complaints, as well as

Strategic Legal Practices, APC
1840 Century Park East, Suite 430, Los Angeles, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

warranty repair and part replacements data received by BMW NA from its network of dealers, amongst other sources of internal information;

b. Defendant BMW NA was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with N63 engine;

c. Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Engine Defect and its potential consequences until well after Plaintiff purchased the Vehicle and Defendant failed to repair it after a number of repair attempts;

d. Defendant knew (or should have known) that Plaintiff could not reasonably have been expected to learn about or discover the Engine Defect and its potential safety consequences prior to purchasing the Subject Vehicle; and

e. Defendant knew (or should have known) that Plaintiff could not reasonably have been expected to learn about the Engine Defect until after the engine failed and Defendant's inability to repair it after a number of repair attempts.

70.    In failing to disclose the defects in the Vehicle's N63 engine, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

71.    The facts concealed or not disclosed by Defendant to Plaintiff are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle.  Had Plaintiff known that the Vehicle and its N63 engine defective at the time of sale, she would not have purchased the Vehicle.

72.    Plaintiff is a reasonable consumer who does not expect the engine to fail and not work properly.  Plaintiff further expects and assumes that

Defendant will not sell or lease vehicles with known material defects, including but not limited to those involving the Vehicle's engine and will disclose any such defect to its consumers before selling such vehicles.

73.     As a result of Defendant's misconduct, Plaintiff has been harmed and has suffered actual damages.

74.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff has suffered and will continue to suffer actual damages.

75.     Plaintiff is entitled to equitable and injunctive relief under the CLRA.

76.     Plaintiff has also provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  More than 30 days have since elapsed and Defendant has failed to provide appropriate relief for its violations of the CLRA. Accordingly, Plaintiff seeks monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief.

## SEVENTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT BMW NA
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

77.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

78.     Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (referred to as "Mag-Moss"), 15 U.S.C. § 2301(3).

79.     Defendants are a "supplier" and "warrantor" as defined in the MagMoss Act, 15 U.S.C. § 2301(4), 15 U.S.C. § 2301(5).

80.     The Vehicle is a "consumer product" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(1).

81.     In accordance with Defendants' warranty, Plaintiff delivered the

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Vehicle to Defendants' representatives, including its representatives in this state to perform warranty repairs. Plaintiff did so within a reasonable time. Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the defects. However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

82.    Defendants violated the Mag-Moss Act when it breached the express warranty and Defendants violated the Mag-Moss Act when they breach the implied warranties by failing to repair the defects and nonconformities, or to repair, repurchase and/or replace the vehicle.

83.    Plaintiff performed all terms, conditions, covenants, promises and obligations required to be performed on Plaintiff's part under the terms of the purchase agreement, and express warranty and implied warranty except for those terms and conditions, covenants, promises and obligations or payments for which performance and/or compliance has been excused by the acts and/or conduct of the Defendants and/or by operation of law.

84.    Plaintiff has also met all of Plaintiff's obligations and preconditions to bring this claim, or alternatively it would have been futile for Plaintiff to do so.

85.    In addition, Plaintiff has met all of Plaintiff's obligations for bringing this claim as provided in the written warranties, or alternatively, Defendants do not maintain an informal dispute resolution process for the purpose of resolving claims for breach of the implied warranty of merchantability, and does not maintain an informal dispute resolution process for resolving express warranty claims that complies with the requirements of 15 U.S.C. § 2310(a) and the rules and regulations adopted pursuant thereto by the Federal Trade Commission.

86.    Plaintiffs have been damaged by Defendant's failure to comply with its obligations under the express warranty, implied warranty, as well as any other

violations alleged here, and therefore brings this claim pursuant to 15 U.S.C. §2310(d) and seeks remedies available pursuant to Magnuson-Moss Act under California law, including California Civil Code Section 1794 and/or California Commercial Code Sections 2711-2715, and/or other remedies that the Court may deem proper.

87.    Plaintiffs are entitled under the Mag-Moss Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2).

## PRAYER

PLAINTIFF PRAYS for judgment against Defendant as follows:

   a. For Plaintiff's actual damages in an amount according to proof;

   b. For restitution;

   c. For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

   d. For any consequential and incidental damages;

   e. For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

   f. Costs, expenses, and attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2).

   g. For punitive damages;

   h. For prejudgment interest at the legal rate;

   i. An order enjoining Defendant from the conduct alleged herein, including an order enjoining Defendant from concealing the

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

20

existence of the Engine Defect during distribution, sales,
advertisement and customer service and/or warranty visits of
2012 BMW 750i vehicles and to comply with the automotive
repair act by providing consumers with a repair order or an
invoice each time there is an oil consumption complaint and/or
oil top offs;

    j.  An order requiring Defendant to require its dealers ; and

    k.  For such other relief as the Court may deem proper.

Dated: September 4, 2020          STRATEGIC LEGAL PRACTICES, APC

BY:    _____/s/ Tionna Dolin_____
            TIONNA DOLIN
            Attorneys for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated: September 4, 2020          STRATEGIC LEGAL PRACTICES, APC

BY:    _____/s/ Tionna Dolin_____
            TIONNA DOLIN
            Attorneys for Plaintiffs

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067